also known as Nino Appellant. Mr. Kramer for the Appellant, Ms. Nyack for the Appellee. Good morning, Your Honors, and may it please the Court. There's really very little dispute, I think, between the parties about both issues that are raised, and even less about the second issue. I think it's clear or plain, however strong the argument may be, that the two issues are the same. It's a standard of review that the District Court never made any inquiry into Mr. Holman's ability to pay or the willfulness of his failure to pay restitution. So I'll focus on the first issue, which is the jurisdiction, which would make the second issue irrelevant in any event. And the only dispute between the parties on that issue is whether the failure to pay restitution issue that was alleged in Petition No. 2, as Violation No. 2, was still pending. The government, in a footnote in their brief at page 9, I think it's footnote 4, concedes that his arrest on the Maryland charges had been fully resolved at the 2014 hearing, but the government contends that the restitution issue was still outstanding. Although, at the time of the October 2014 hearing, when the District Court said, I'm sanctioning you for your conduct and imposed certain conditions on Mr. Holman that are contemplated under Section 3583, at that time, the District Court said, these are the sanctions I'm imposing for your conduct, which the District Court had made inquiry into Mr. Holman's failure to pay restitution, as well as his arrest in Maryland that had been dismissed by them. And, of course, Mr. Holman repeatedly explained that he was unemployed and, therefore, unable to pay restitution from the very beginning. But then the District Court said, I'm sanctioning you for your conduct, set a hearing in February, but said to Mr. Holman, if you comply with all the conditions I've just imposed, you don't have to worry about anything for this next hearing. I'm sorry. Not February, but December, I think. December. The next hearing was to be in December 2014, yes. And then nobody did anything for almost 18 months. The probation office filed a petition in 2016 after Mr. Holman had incurred a new arrest and then filed a petition, violation number four, they called it, for failure to pay restitution, but it was for a different time period. The initial violations were number one for the Maryland arrest, number two for the failure to pay restitution for several months in 2014. And then after nothing had been, the District Court had sanctioned Mr. Holman for those two actions, those two violations. Nothing was done for almost 18 months when the probation office filed a petition in 2016 for a new arrest in Virginia and a added allegation number four, which was failure to pay restitution for a different time period than had been in the violation number two that was dealt with at the October 2014 hearing. Everybody agrees that no warrant or summons was issued for violations number three or number four and that obviously they were not, the District Court did not deal with them, complete any action on them until after the period, well after the period of supervised release, it expired. If a court had done exactly what it did, but said specifically, I'm not dealing with restitution, would you have been okay with reviving this 18 months later? In other words, is the problem just the confusion about what happened? I don't think so. I don't think a district judge can just say I'm not going to deal with a violation. I think a district court has to deal with the violation or not. At the time, so what I understood was happening here, and maybe you can correct me if I'm wrong, is that because he was unemployed and there was some request to say, well, let's wait 60 days to see if he can come into compliance. So I don't mean to say that the court was ignoring it, but that if the court had made it clear, well, I am not resolving this, that seems like what happened. We're going to wait 60 days and see what happens. No, I agree with you. That's what the parties requested, and that's what the district court did. But then the probation office submitted a report that said in the interim, submitted just before that scheduled December hearing, that said Mr. Holman has complied with all the increased conditions that you've placed upon him in the meantime. And the district court then cancels the hearing. It didn't say vacated. Admittedly, the minute order said to be rescheduled, but it said the hearing for December is canceled. So at that point, there was no indication that any action with respect to the restitution alleged violation was outstanding. In fact, Mr. Holman has said I'm unemployed. That's why I can't pay. But I guess my question is, is that the problem? That at the point where he said, you know, we're rescheduled the hearing or something, he didn't say. And that means that remains pending. Was there something specific? I see. And I think that's exactly right. I mean, there was no indication. Let me put it this way. There's no indication anywhere in the record that the rest of the failure to pay restitution, which, as I've argued, was improperly adjudicated in any event, but that that allegation number two, violation number two, was still outstanding after the cancellation of the December hearing. Because the probation office submitted the report that said he's been in compliance with all the conditions in the district court. Then the day of the scheduled hearing says the hearing's canceled. No reason is given. And I don't see anything that can be read into that other than that. This proceeding is concluded on these violations. There was a minute order. Part of the minute order said to be rescheduled, but nothing was ever rescheduled. What do you make of that, you know, to be rescheduled? How do you explain that? I don't. It seems to me I don't think I can, nor do I think the government can, frankly. It seems to me totally inconsistent with the report from the probation office saying that he's completed all the conditions. The district court saying this is what I'm going to do to you for your conduct. And then the day of the hearing cancels it. And it didn't seem to indicate it was a scheduling issue. So it's unknown. And I don't think that should be interpreted against Mr. Holman. Mr. Krenberg, is there any, if I look at the record, it's a little bit hard to decipher sort of month by month from when Mr. Holman was released from prison to when his supervisor released, finished, what the history of payments was. Is there any record of when payments were made and for how much? No. And it's completely unclear. I think at one point the defense lawyer said, Mr. Holman actually said at the final sentencing, I did make payments along the way. I came in when I had money and I made payments. And then he said, I just made one actually recently, he told the district court. The defense attorney at one point said, I believe Mr. Holman has made payments. Nobody ever clarified it. Mainly because the district court didn't make any inquiry. Let me ask you, what does it mean in practice to require payment of restitution at a rate of no less than $50 each month? And in particular, if Mr. Holman were to make a $200 payment, if he were to consistently make payments and then make a $200 payment and then not make payments for the ensuing three months, would that be permissible because he's effectively prepaid? Or would that be impermissible because he has to pay at a rate of no less than $50 each month? I think most judges would interpret that if you have a surplus one month, you should try to make the payment. And that if you can't make it the next month, it probably would apply. But again, because... In other words, you would be in violation if you hadn't made it, even though you were ahead. Well, you'd be in violation only if you willfully failed to pay. Even if you were ahead, even if you've made more than... I have to say, certainly the record in this case doesn't provide it because the district court just simply said you didn't pay, you're in violation, contrary to Bearden. But I think most judges would interpret that if you have the money, you should pay at least $50 a month. You don't have to pay $200 a month, so that's something you did on... is good for you on your behalf if something comes up in the future. But they would, I think... but there's nothing in this record... Right, one way or the other. But I think they would credit it that... I mean, it only comes into play, I think, that's the problem in this case. It really only comes into play if there's a willful failure to pay and the judge makes the inquiry and that wasn't done. And as a matter of fact, when there was any inquiry, Mr. Holman explained repeatedly, I'm unemployed, I can't pay. And the... one of the reasons I'm asking is because the March 31st, 2016 probation report, which is at page 33 of the appendix, reports that they had collected to date $1,110. Right. Which is about 22 months worth if it's $50 a month. And so it made it seem like there... and then there's various comments about long periods of non-payment. And it does suggest that he had done some larger payments at the beginning and I just wasn't sure what to make of that. Well, as a matter of fact, that report says that he... a payment was received on July 29th, 2014 for $200. And if violation number two, the original petition, which is page 14, says he failed to pay for April, May, June, and August, specifically skipping July. So obviously there was a payment made in July and there was... obviously he made $910 in payments at other times. There's no indication in this record when, although as the defense lawyer pointed out, I believe that other payments have been made by Mr. Holman. But if you look, and this lends further support to Mr. Holman, violation number four is for a different time period than violation number two. Yes, yes, we understand that. Violation number four is from November, 2014. So that's why another reason... this would have said... if the probation office thought that the restitution violation had not been concluded, it would not have said as of November 14th, it would have said the previous violation... Going back to May or whatever it was in 2014. ...has not been resolved. As a matter of fact, when the district court asked at the first proceeding in 2016 said that about the restitution, that violation goes to March of this year, this petition, the probation office responded yes. It was only later after the issue of jurisdiction arose that people tried to say, wait a minute, that restitution violation is still outstanding. And is it your understanding, Mr. Kerman, that under Bearden, a allegation of restitution violation could be resolved by a showing that someone was looking for work? Yes. In other words, if they were unable to pay but were looking for work. Yes, I think it's under Bearden, it's clear that the failure to pay has to be willful. And if you don't have any... The restitution wouldn't be resolved, but the probation violation... The restitution obligation would still be outstanding. But the violation of failure to pay restitution could not be resolved against the defendant unless there was a showing of willfulness. And I think hand-in-hand with that is a showing that you have money available. I mean, you could win the lottery theoretically, not be employed and not pay, and that would be a violation, even though you're unemployed. Or you could come into an inheritance. But there has to be a... First of all, there has to be an inquiry by the district court. It's not the defendant's burden to show that the failure to pay was not willful. It's the initial burden of the district court to make the inquiry or the government. And indeed, the government, neither in the district court or in their brief in this court, has ever contended that Mr. Holman willfully failed to pay restitution. But I don't think the court needs to reach that issue in any event because of the jurisdictional issue. Thank you. I'll reserve the time. Thank you. Thank you. If I have any. May it please the court. Priya Naik on behalf of Appellee of the United States. I'll begin with the jurisdictional issue. The district court had jurisdiction to revoke Appellant's term of supervisor lease based on the summons underlying the restitution violation. And that's because that violation was never resolved. Importantly, although nothing happened, and we admit that it would have been better if something happened between December of 2014 and April of 2016, but Appellant made no restitution payments during that period. And he was aware that he made no restitution payments during that period. I was just going to ask you the same question that I had asked Mr. Kramer, which is the record on that. Because one can read this record with the $1,110 payment that he, in fact, had prepaid quite a chunk. And I just don't know what your position is on if that were the case, does that cover him for some months when he did not take an action of making an additional payment for that month? Does that put him in violation or not? If that were the case. I'm not asking you to concede. Frank, I think that the restitution condition that is in the judgment could be read either way, that it is a minimum of $50 a month and you must pay $50 each month, or you're responsible for a total of $50. But in any case, probation saw it as a violation when it filed the petition in September 2014. And the record is clear and it's undisputed that the last payment was made in July of 2014. So probation's view at that time was that he was in violation, so it appears that they're reading it that there must be a $50 payment each month. In which summons are you relying on, the May 28, 2014 summons or the October 15? Well, how long does that summons provide a basis for a foundation for jurisdiction forever? No, Your Honor. And in this case, it did provide a basis for jurisdiction through the end of the term of supervised release because the violation underlying that summons was never resolved. But there's a limit in the statute, so it couldn't be forever because Section 3583I allows the post-term revocation only for a period reasonably necessary for the adjudication of matters arising before its expiration. And it's the government's burden to show that it's reasonably necessary for the resolution? It's the government's burden to show that the extra period is reasonably necessary for the resolution of a violation that was made subject to a summons during the supervised release. No, it's not the defendant's burden to show. I believe that's correct, Your Honor. Okay. And in this case, there's no question that an additional time period was reasonably necessary to resolve, at a minimum, the Virginia arrest because the defendant wasn't convicted until after his term of supervised release expired. But the offense occurred before the expiration of the term of supervised release. My concern is when things are left, I'm sorry for my voice, are left in a limbo like this, how do you determine what's reasonable? That is, it looks like what happened initially in 14. It looks like it was over. Can you go two, three, four years later and say, well, it really wasn't over and we have a summons from 14 that is still unresolved that provides a jurisdictional basis now, several years later? I don't think the court has to go that far because No, we do have to think about that. Absolutely. It's the first thing that leaps out is how far can this go? It certainly makes sense within a closed period of time. But I'm not sure beyond a very closed period of time what we're talking about. Especially in a case like this where it looks like the matter was resolved. We disagree that the matter was resolved. I understand that. But in addition, Your Honor, in this case, I think within the term of supervised release, it was certainly a reasonable amount of time, especially considering that no remedial action was taken with respect to appellants or institution payments in terms that he didn't make any. And so we don't have a petition that's filed long after supervision ends because he's still subject to the terms of supervision. And this doesn't come as a surprise to him. And moreover, the petition that was filed in April of 2016 gave him notice before his term of supervised release expired that he's going to be held accountable for these two violations, the continuing restitution violation and the new arrest in Virginia. So, Ms. Naik, you are relying on the October 15, 2014 summons. But the judge said that, I guess it's the docket entering on April 14th in 2016, he said alleged violations three and four would be addressed at any forthcoming hearing on violation one. And violation one was not the restitution violation, right? That was the marijuana from Virginia. That's correct. So he's thinking that what's open is violation one, not violation two and the later summons, isn't that right? I had not noticed that in the docket entry, Your Honor. But just going back to whether it's resolved or not, because I understand the government's relying heavily on the notion that there was an open-endedness in what was happening in 2014 in terms of the court proceeding. And as we asked Mr. Kramer, there is this ambiguity given that the docket says to be rescheduled. So that would seem to support your position. But if you just look at what happened. So the judge at the October 24, 2014 appearance, the government asked for a verbal reprimand on the marijuana charge because it had been dismissed, and the judge did that. And then the government asked that Holman be given an opportunity to pay, and the defense agreed. And Holman was at that point, as you recall, technically employed, but he wasn't getting earning opportunities because it was a kind of, you know, as-needed basis. And so the judge then recognized that he didn't have an ability to pay and said, I'm going to put you under electronic supervision and house arrest and give you a chance to prove that you're looking for work. And you can only leave home to look for work. You have to submit to weekly drug testing. You have to see a counselor. And he says, comply, and I'll take you off it. There's a chance you can salvage this situation. I'm going to give you the chance. We'll be back here in December. If there's violations between now and December, you'll be spending Christmas in prison. And then to probation, the court said, if there's any violations between now and then, I want to be informed immediately. Probation does not inform him of any violations. And to the contrary, in December, just before the December appearance, the probation status report said that he'd started employment last week and he'd been compliant with the location test monitoring and all urine tests. So even though he hadn't paid, it seems that what the judge was saying was you do an earnest job of finding some way to earn the money and you will be in compliance, not with restitution but with the probation terms. And he said, otherwise you're going to be spending Christmas in prison. He doesn't spend Christmas in prison. He cancels the hearing. Why isn't that resolution of any probation violation concerning payment of restitution during that period? Well, I think that the understanding was that the purpose of him seeking employment was to make his restitution payments. Absolutely. And so not just to seek employment. And I think it would be a different situation if an appellant had been making bona fide efforts to seek employment and not found any. But in this case, the record reflects that he did find employment. The preceding week in December. Correct. And so I think the expectation is, well, he's just got this job. That memo from probation that was filed in December 2016 doesn't say anything about restitution payments. So it doesn't say he's in compliance with respect to his payments. It says he's found a job. And I think the implicit understanding in that is that, well, now he should be able to make his payments. And yet no payments follow. And my understanding is that all parties understood that what comes next is you're working, you're getting an income now, which you weren't before, and so you should be making payments. But you're confusing the merits of the situation with whether or not the call on the original summons was over. Of course someone could. You had the original summons. They came in, the judge said what the judge said, and then they went on about what they were doing. Now, people can violate the requirements later. It doesn't mean that the original summons is still alive because they subsequently violate what the judge said they had to do. That's the part of the case that makes no sense to me. You're arguing it exactly that way. Well, later on, he didn't do what the judge intended that he will do, as if to suggest, therefore, the original summons was still alive. That doesn't make sense. Well, our position is that he was given another 60 days to come into compliance, and a part of that was to seek and hopefully find employment, which he did. But the second part was to actually make the payments, which he never did. And it's undisputed that his last payment was in July 2014. Because the original summons was still alive. He certainly could be called back on the carpet and be required to come back to the district court judge if probation felt that there were some issues. But I don't understand this notion. You come before a judge on the summons, the judge says what the judge says, and you're done. You walk out. Sixty days comes. Nothing happens there. Why wouldn't anyone reasonably assume we're done? Now, I may be called back in again, but that's a new summons. I disagree. I know you disagree, but I'd rather have reasoning. Yes, Your Honor, and I think it's because so had the December hearing gone forward, I think that would be fairly and unquestionably part of the original summons because when he originally came into court, probation and both parties asked for another 60 days for appellant to come into compliance. And so had that happened, it would have just been another hearing on the same summons. And then the court says, well, I'm canceling the hearing. It's going to be rescheduled at a date and time to be determined. And then he doesn't do that. But the violation is still left open. The only matter left to address at that point is restitution because the stricter monitoring that was imposed for just that 60-day period, that was all complied with. The only thing outstanding was restitution. And so then they come back on the restitution violation, admittedly after a new petition, but it's still the same violation because appellant didn't make, you know, if he had made $5, $10, or sporadic payments, I think we might be in a different situation, but there were no payments during that interim period. Ms. Naig, how does court supervision typically work under supervisory release? I mean, you don't need, like if you're a judge with a defendant under supervision, do you periodically have status conferences with that individual, even if no violations are reported or not? I am not 100% sure. I just wonder about, and this is actually related to sort of my little bit of uncertainty about what a summons is in this context, given the statutory role that Congress gave it. Because presumably a judge can call a defendant in for, let's say, a status conference without a summons, right? Does that happen? I'm just not at liberty to say I'm not sure. Yeah, I mean, you could just sort of say let's check in in six months. I mean, it's supervised release, so presumably. I would imagine that that happens. But what this statute requires is a summons to trigger the post-term judicial review. Right. I mean, in fact, later there was a hearing at which Holman came, and there was no separate summons for that. He just sometimes defendants show up without being summoned. Correct. And it may be that the summons or the warrant is the formal way in which the court requires a defendant to come into court. But if he's coming in on his own. And what is the role of a summons? What's the purpose of a summons? To hail a defendant into court at a particular date and time. But once a defendant is summonsed into court, then further hearings can be scheduled on the basis of that summons. And so we see this as a continuation of what started on October 24, 2014, and these later hearings followed, admittedly with a large gap. But that matter just was not resolved. Again, this is just sort of a practical question. Is there a practice of discharging a summons or extinguishing a summons? I mean, when it's served its purpose with respect. I know that wasn't done here, and that's part of why we're here. But have you ever seen that, or is that something that courts do? I'm not aware of that practice. But I think I would just go back to once the purpose of the summons is served and the defendant is hailed into court, then further proceedings can be scheduled as needed and then the court has the power over the defendant in that way. Your Honor, just briefly on the Bearden issue, I just want to emphasize that there would be no prejudice under any standard of review because revocation was revoked based on not just the restitution violation but the Virginia conviction. And reading the court's decision carefully, at the time he actually revokes the term of supervised release, he's talking about the Virginia conviction, saying this carries a requirement of jail time. And with Bearden, the rule of Bearden is that you can't imprison someone solely because of their inability to pay. But in this case, appellant wasn't sentenced to jail time solely because of his inability to pay. The district court said more than once at pages 122, 117, 77 of the appendix, he says this conviction carries with it a requirement of incarceration. And there is no suggestion that had the restitution been the only violation that the district court would have given a period of jail time. I had a question about that. I think you're right, and I think the defense counsel was wrong, although Mr. Kern will correct me if I'm wrong, that there is a mandatory revocation for possession of drugs, conviction or no. There is a mandatory revocation, that's correct. There was some confusion in my view in the record about whether the resultant incarceration when supervised release is revoked is for the underlying offense, the bank theft, or for the supervision violation, the drug offense. Because there's several places where the district court asks about the guidelines range for the marijuana offense, and I just wasn't sure why that would be. Did you follow that? It seems like he's acting as if he's having to sentence Holman for the offense, not revoke supervised release, which was part of the sentence for the bank theft. Do you have a position on whether the incarceration that occurs as a mandatory result of the drug possession is a sentence for the drug possession or is it a sentence for the bank theft? I think it's a sentence for the drug possession offense that was committed while on supervision for the bank theft. I don't think that's right. That can't be right because that would be double jeopardy. I mean, wouldn't it, if it's an offense that he's been sentenced for? Your Honor. It's not because it's Virginia in this case, but I thought that it was clear under Johnson that any term of incarceration that's imposed as a violation of supervised release is pursuant to the sentence for the bank theft, the underlying offense. Well, that's when he's talking about the guidelines. I just didn't, yeah. Enlighten me on that, the guidelines invocation. So given that he's on supervision for the bank theft, the fact that he's committed a new offense carries with it a requirement of incarceration. Right, but not pursuant to a guideline. I mean, the judge makes a determination how much of the supervised release to convert into a sense of imprisonment. That's correct. But my understanding is that there was a guideline. The guideline range was five to 11 months, and the judge chose to go below that and give him four months. And in preparing for this argument, I noticed Section 3583G, which is in the same statute as 3583I, it states explicitly that there is mandatory revocation and a term of imprisonment for a defendant who possesses a controlled substance in violation of the supervised release condition. So that's a statutory. And that's what I was getting at with the Bearden argument, is that that's why the judge felt bound to impose both to revoke probation at all and to impose a sentence of jail time, because he had to for the Virginia offense, separate and apart from the restitution violation. This is maybe a little bit far afield, but I had a question also reading the statute. The imposition of house arrest in 2014, was that revocation of supervised release? Not in so many words, but in looking at the statute, it does say that that may be imposed only as an alternative to revocation, which I think supports our argument that that was for appellants admitted drug possession in Maryland back in 2014. And that's a logical and permissible sanction for that sort of conduct. Again, he was given GPS monitoring, house arrest, curfew, and notably drug testing, which corresponds to the nature of drug possession and use which the district court was unhappy about. And also preparation for gainful employment. So the two kind of relate in the end in the terms that were imposed during that period. You've got to get yourself clean. You've got to be not on drugs. You've got to stay at home, except when you're out and looking for work. So it does seem to have elements of both, which is sort of the judge was treating him as a whole person and trying to address both issues. In a way, yes, but I don't think the judge was punishing him for the restitution violation at that time, given the context and that all parties were asking to give him a chance and give him another 60 days because he was unemployed. If there are no further questions, we ask that this court affirm the judgment of the district court. Okay, thank you. Mr. Kramer, you had no time left, but we will give you two minutes. Thank you. In part because I have a question. Yes. It seemed to me the colloquy between counsel and Judge Edwards acknowledged that at the point that the district court said, you know, we'll wait this two months and see how things go. And clearly at that point, even though they were working under the original summons, they could have this later date, right? And there was no requirement for a new summons or anything like that. We're still working on the same one. So what cuts that off? If the judge could, in fact, schedule that hearing 60 days out and then say, well, okay, I'm going to reschedule it, what is it that determines that that summons is no longer providing jurisdiction? In other words, is it just reasonableness? What are we looking at? I think a few things, actually. First of all, when he says I'm sanctioning you for your conduct, not just for your drug use but for your conduct, which there had been discussion. He had a long discussion about he hasn't made restitution payments and the government's saying he's unemployed and can't make them at that October 2014 hearing. And then he says I'm going to sanction you for your conduct and I'll see how you're doing in two months. We'll come back. And then he cancels that hearing but never reschedules anything. Never actually rescheduled anything until after the period of supervised release it expired. So I think whatever the bounds may be, and Judge Edwards asked how long can it be pending, two or three, before there was even any new petition filed it was almost 18 months. I think it was 16 or 18. And then nothing was even done on that until after supervised release it expired. So, I mean, I think leaving it for any period of time, maybe 30 days if it was during the holidays or something, but allowing it to just sit there for 18 months I think exceeds the bounds of any reasonableness inquiry. And I think the statute, I'm sorry, I didn't mean to. No, but it seems like you're making a reasonableness argument. Now, as I understood what the court said there, and I agree that it's somewhat ambiguous exactly what is happening because it does seem like the sanction is more for the drug offense because the court says you have to show that you're looking for work and making the payments. So he doesn't, I mean, he can't impose something if he is unemployed and can't make the payment. So he says you have to show that you're looking for work and that you're complying. And it's also true that when we get the status report from the probation officer, he says he's done all these other things. He doesn't mention restitution at all. That's not part of it. So I'm just trying to figure out how it is we decide that that summons is no longer good. And what I think you're saying to me is it's a reasonableness inquiry. Well, I think I'm saying both, actually. I'm saying that it was, in fact, terminated when the district judge canceled that December hearing and never rescheduled anything. But I'm also arguing alternatively that even if you don't accept that, that there's a reasonableness. I think it's in 3583I. It says a period reasonably necessary. But that's after the... So there is a reasonableness requirement in any event to have proceedings continue after the period of supervised release has expired. So I think I'm arguing... I think it was concluded. And any ambiguity in that regard, I think, ought to be akin to the rule of lenity resolved in the defendant's favor when the government took no action afterwards to indicate that it believed that the restitution obligation was still outstanding. If I could try to answer a few of the questions that arose. District judges, I think, take a different... And none of this is in the record, but district judges take different approaches to supervised release. If a defendant is not having any issues, some judges will never see the defendant again and the term expires and that's it. There is, I think, a more recent movement for judges to hold status hearings every... It's called just status hearings every 60 or 90 days. And usually that will be early in the period of supervised release. And if the defendant is doing well, then they'll become either infrequent or discontinued. So that's generally the way it happens. I don't agree that... Actually, on the question, there is mandatory retribution for drug possession, but it says, and imprisonment. But what I'm also arguing is the district court clearly said, this patent that you've engaged in, failing to pay restitution, committing a crime, clearly failing to pay restitution was a part of the reason for the district court's length of the sentence. We don't know how much of that, because the district judge didn't indicate. But to say that the only reason... I'm not saying that revocation wasn't mandatory, but putting aside the fact that there was no jurisdiction to do that in any event. But if there was jurisdiction, yes, revocation is mandatory for a drug offense like that. But at the same time, the district court clearly... The first thing he said was, your patent of failing to pay restitution, and this is why I'm imposing this sentence of this length. You're talking about the 2016? This is the 2016 when he actually sentenced him, yes. What do you make of Ms. Nyack's point that maybe the house arrest terms were in fulfillment of the mandatory incarceration requirement for the earlier drug offense? I'll say the same thing again. He said for your conduct, knowing that it's not clear, of course, that Maryland charges have been dismissed. If it was mandatory at that time, certainly nobody said it was mandatory at that time, but if it was, that doesn't mean that the restitution didn't play a role in that and was part of that and was part of the resolution of it. So I don't think you can say, especially the way the district judge dealt with it here, I don't think you can separate the two and say he imposed the sentence solely because of the drugs. In fact, when everything he said was to the contrary, he concentrated on the restitution. I did just want to say, too, the government said that Mr. Holman made no restitution payments. As you pointed out earlier in the September 2014 petition, it clearly said that he had paid $1,100, including $200. These payments were coming in at some time. As a matter of fact, Mr. Holman said before he was sentenced, whenever I can, I come in here and drop it off at the clerk's office. I pay whenever I can. But because the district judge made no inquiry and treated it as just an automatic violation of supervised release, we don't know. The record clearly shows that he paid $1,100 somewhere along the line. When and how, because the district court didn't make the required inquiry, we don't know the answer. But the restitution payments, Mr. Holman himself said, I just made a payment recently before he was sentenced. So I don't think it's true that the record shows that he didn't make any payments. The government argues that Mr. Holman has waived his argument with respect to the scope and meaning of 3583I. If we were to decide that the summons was still available, do you think we would need supplemental briefing on that? Or have you waived it? Why not? You disagree with the circuit cases going either way, but you don't say much else. Because of the way this case was, because the sentence was set up with a memorandum of law with a 20-page limit, which didn't allow much room. I would ask for supplemental briefing if the court thinks that I've waived the issue of whether the Presley and Naranjo and Edwards were correctly decided. There just wasn't room. Judge Garwood's dissent in Naranjo obviously is what, as I pointed out, relied upon that the dissent had it correctly. So, yes, there was a 20-page limit. And frankly, in all honesty, there was not enough room to go into any detail. Edwards is in a recent and lengthy opinion. So I don't think I've waived that issue. I pointed it out, and I said Judge Garwood, the dissent, and Naranjo correctly pointed out that it was wrongly decided. The fact that there wasn't room in the page limits for these types of memos, given the expedited nature of the case. Has Mr. Holman served a four months? He's in custody now serving the sentence. I think he's got about a month left or less. But then he has the supervised release to follow that, yes. But he served, I think, about three months. I think he went in at the end of October. So I think he served almost three months. Okay. All right.  The case will be submitted.
judges: Brown, Pillard, Edwards